IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SITEPRO, INC., § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | CIVIL NO. 6:23-CV-115-ADA-DTG |
| WATERBRIDGE RESOURCES LLC, § | |
| WATERBRIDGE OPERATING LLC, § | |
| WATERBRIDGE HOLDINGS LLC, § | |
| WATERBRIDGE MANAGEMENT INC., and § | |
| THE INTEGRATION GROUP OF THE § | |
| AMERICAS, § | |
| § | |
| *Defendants.* § | |

**REPORT AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ALAN D ALBRIGHT,
      UNITED STATES DISTRICT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. This suit has been brought by plaintiffs SitePro, Inc. ("Plaintiff") for infringement of its intellectual property consisting of trade secrets, trademark, and patents. Before the Court is Defendant The Integration Group of the Americas' ("TIGA Defendant") Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. ECF No. 21. After careful consideration of the briefs, arguments of counsel, and the applicable law, the Court **RECOMMENDS** that the TIGA Defendant's Motion to Dismiss (ECF No. 21) be **DENIED**.

1

This suit was filed on February 13, 2023. On April 14, 2023, Plaintiff filed its First Amended Complaint. ECF No. 15. TIGA Defendant filed its Motion to Dismiss on May 23, 2023. ECF No. 21. Plaintiff filed its opposition on June 6, 2023. ECF No. 30. TIGA Defendant filed a Reply on June 13, 2023. ECF No. 32. The Court held a hearing on September 12, 2023, in which it recommended that the motion to dismiss be denied. This report and recommendation memorialize that ruling.

## I. FACTUAL BACKGROUND

This suit arises from the parties' prior business relationship and events that followed termination of that relationship. From 2015 to 2020, Plaintiff was a vendor for the co-Defendant in this case, WaterBridge Resources LLC *et al.* (collectively, "the WaterBridge Defendants"). Plaintiff provided a supervisory control and data analytics ("SCADA") system to aggregate data from, and control operations of, WaterBridge's network of saltwater disposal wells. The WaterBridge Defendants and the TIGA Defendant are separate entities. Non-party EVX Midstream Partners was formed in 2015. The third-party EVX entities are WaterBridge affiliates that are managed by the WaterBridge Defendants' personnel under a shared services agreement. ECF No. 20 at 2; ECF No. 31 at 5 n.3.[1] EVX became Plaintiff's customer in December 2018. ECF No. 15 ¶ 86.

In 2020, the WaterBridge Defendants terminated Plaintiff's services under a release agreement and the WaterBridge Defendants hired the TIGA Defendant to develop a SCADA system. The TIGA Defendant provided a Phase 1 Engineering Assessment to plan a migration in which the TIGA Defendant and the WaterBridge Defendants repurposed the existing OnLogic IPC

---

[1] The WaterBridge Defendants filed a Partial Motion to Dismiss in this case. ECF No. 20. The WaterBridge Defendants joined the TIGA Defendant's motion in part. *Id.* at 6 n.3.

—the Industrial PC described in Plaintiff's Amended Complaint—at each saltwater disposal facility and integrated the Ignition Edge Panel for the local HMI project. ECF No. 15 ¶ 78.

Plaintiff alleges that in late 2020 it discovered the WaterBridge Defendants had not honored their contractual obligations and had misappropriated trade secrets. A press release that was issued on October 1, 2020, references the WaterBridge Defendants and the TIGA Defendant implementing a SCADA system like Plaintiff's system. A member of the TIGA Defendant, Trent Boudreaux, explained in the press release that the TIGA Defendant had worked with the WaterBridge Defendants to deploy Ignition Edge Panels at 65 saltwater disposal well facilities using Industrial PCs. ECF No. 15 ¶ 75. Additionally, in August 2022, Plaintiff allegedly learned that the WaterBridge Defendants had begun to convert three of EVX's sites to the WaterBridge Clone System. ECF No. 15 ¶ 87. As a result, Plaintiff filed this suit on February 13, 2023.

## II. LEGAL STANDARD

Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6). A claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) Motion, the Court must accept well-pleaded facts, view the case most favorable to the non-movant, and draw reasonable inferences in the non-movant's favor. *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021). Accepting the facts as true, the fact must be sufficient such that the claim "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include specific factual allegations in support of the claim. *Id.* Mere recital of the elements of a cause of action, and conclusory allegations are insufficient. *Id.* Facial plausibility exists when the well-pleaded facts create a reasonable inference that the movant is liable for the misconduct alleged. *Id.*

## III. DISCUSSION

The TIGA Defendant's Motion to seeks dismissal of four counts of Plaintiff's First Amended Complaint. This report and recommendation is organized by the counts in Plaintiff's Amended Complaint.

### A. Count IV: Computer Fraud and Abuse Act (18 U.S.C. § 1030)

Plaintiff alleges violation the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), and (a)(4). ECF No. 15 ¶¶ 136, 137. Both subsections of the Act are independent, alternative bases of liability, that require "access[ing] a computer without authorization or exceed[ing] authorized access." 18 U.S.C. § 1030(a)(2)(C), and (a)(4). Subsection (a)(4) also requires conduct furthering an intended fraud and obtaining anything valued at more than $5,000 in a one-year period.

The TIGA Defendant's Motion makes alternative arguments that SitePro's CFAA claims should be dismissed. First, the TIGA Defendant asserts that Plaintiff's CFAA claim is barred by the two-year statute of limitations. 18 U.S.C. § 1030(g) (stating that "No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage."). Second, the TIGA Defendant argues that the requirements of §1030(a)(2)(C) and (a)(4) cannot be met because Plaintiff cannot show the TIGA Defendant exceeded its authorized access. ECF No. 21 at 8 n.42. The statute defines "exceeds authorized access" as meaning "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

On the statute of limitations, the TIGA Defendant asserts that Plaintiffs knew of the purported damage in late fall 2020, because of the press release from October 1, 2020, that was referenced in SitePro's Amended Complaint. That was more than two years before the complaint was filed.

4

Plaintiff counters that the access relevant to CFAA was taken by the WaterBridge Defendants and the TIGA Defendant at EVX sites, but Plaintiff was not aware of this access until August 2022. ECF No. 30 at 2. Plaintiff does not dispute that by February 17, 2020, WaterBridge terminated its relationship with Plaintiff, and following that, Plaintiff terminated all previously authorized access given to WaterBridge and the TIGA Defendant. However, Plaintiff argues that while EVX maintained its contract with Plaintiff up to August 2022, EVX was allowing the WaterBridge Defendants to access three facilities during that time without seeking SitePro's permission. *Id.* at 3.

In the Court's judgment, Plaintiff's claims satisfy the 12(b)(6) pleading standard. TIGA Defendant's statute of limitations argument is premised on Plaintiff having pleaded itself out of Court due to its own admissions. *See* ECF No. 21 ("The Complaint establishes"; "SitePro cites a press release issued by WaterBridge dated October 1, 2020"; "SitePro admits"). Plaintiff's allegations about the October 1, 2020, press release, however, relate to the general factual allegations and particularly trade secrets. ECF No. 15 ¶ 75. By contrast, Plaintiff's CFAA claims rely on allegations about Defendants' accessing parts of Plaintiff's proprietary system through the EVX facilities through August 2022—which places the claim within the statute of limitations. Plaintiff has not pleaded itself out of its CFAA claims. The Court can plausibly infer that Plaintiff was not aware of the excessive unauthorized access until it discovered the access being made through the EVX facilities in August 2022.

On "exceeds authorized access," the TIGA Defendant argues that Plaintiff's CFAA claims fail as a matter of law because Plaintiff alleges the WaterBridge Defendants and the TIGA Defendant "*had access* to *both* its computer *and* its trade secrets." ECF No. 21 at 9. The TIGA Defendant cites *Van Buren v. United States*, and a district court case applying *Van Buren*, finding that one "who has 'improper motives' for obtaining information that is otherwise available to him

5

does not commit an offense under CFAA." *Pinebrook Holdings, LLC v. Narup*, No. 19-cv-1562, 2022 WL 1773057, at *12 (E.D. Mo. June 1, 2022); *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (explaining that the statutory history indicates the CFAA does not cover "insiders like Van Buren who use their computer access for an unauthorized purpose").

Plaintiff responds that the Defendants were accessing parts of its proprietary system that the Defendants did not have authorization to access. Plaintiff contends the Defendants did so by adding their employees to EVX's list of users without SitePro's permission; using the SitePro 'SiteControl' local applications to place the SitePro control software into "DEBUG MODE"; and checking to see if the system was running properly by importing disposal ticketing data and other data from Defendants' system back into Plaintiffs' proprietary platforms. ECF No. 30 at 3 (citing ECF No. 15 ¶¶ 91–92).

In the Court's judgment, the allegations of unauthorized access to Plaintiff's system state a claim under the CFAA. The allegations are sufficient even assuming that Defendants accessed the system through hardware that Defendants were authorized to use. This is sufficient to state a claim. *Van Buren*, 141 S. Ct. at 1657–58 (explaining that it is consistent with the text of CFAA "to equate 'exceed[ing] authorized access' with the act of entering a part of the system to which a computer user lacks access privilege.") By alleging that the Defendants accessed and altered parts of a system that they did not have permission to access or alter, Plaintiff has sufficiently alleged a claim involving the requisite "unauthorized access" of subsections (a)(2)(C) and (a)(4).

### B. Count V: Civil Conspiracy

The TIGA Defendant argues that Count V, Civil Conspiracy, should be dismissed because it is preempted by the Texas Uniform Trade Secrets Act (TUTSA). TUTSA explains its intended preemption by stating that it "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," but does not bar "contractual

remedies, whether or not based upon misappropriation of a trade secret," or "other civil remedies that are not based upon misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a) & (b)(1)–(2).

The TIGA Defendant argues that Plaintiff's Civil Conspiracy count is premised entirely on alleged trade secret misappropriation. ECF No. 21 at 9–10 (citing ECF No. 15 ¶¶ 144–47 ("WaterBridge and TIGA conspired to misappropriate, steal, and use for their unlawful gain, SitePro's trade secret information . . . . WaterBridge and TIGA undoubtedly communicated . . . to determine . . . what SitePro confidential information and trade secrets to target")). Thus, the TIGA Defendant contends it is preempted.

Plaintiff responds that its civil conspiracy claim is based on facts unrelated to the misappropriation of trade secrets. ECF No. 30 at 8 (citing *360 Mortg. Grp., LLC v. HomeBridge Fin. Sercs., Inc.*, No. 14-cv-847, 2016 WL 900577). Plaintiff points to its allegation that tortious conduct transpired when WaterBridge and the TIGA Defendant agreed to "convert[] EVX facility sites using the information unlawfully pilfered," and "convert[] EVX to WaterBridge." ECF No. 15 at 45. Plaintiff contends this allegation avoids preemption.

In the Court's judgment, there is insufficient information to find the Civil Conspiracy claim preempted under the 12(b)(6) standard. First, Plaintiff's allegations about non-party EVX raise contractual interference issues that are separate from any trade secrets. ECF No. 15 ¶ 151–55 (discussing tortious interference with EVX contracts in Plaintiff's First Amended Complaint). This is sufficient to avoid preemption. *360 Mortg. Grp.*, 2016 WL 900577, at *7 (holding that allegations of civil conspiracy to commit tortious interference with contractual relations may not be preempted as it is based on facts unrelated to facts forming the trade secret misappropriation.) Second, at this stage of the case, it has not been proven that the allegedly misappropriated information was a trade secret, which ameliorates the preemptive effect of TUTSA. In the Court's

judgment, the TIGA Defendant has not met its burden to show the Civil Conspiracy claim is preempted at the 12(b)(6) stage.

    **C.    Count XI: Infringement of U.S. Patent No. 11,175,680, and**

    **D.    Count XII: Infringement of U.S. Patent No. 11,294,403**

The TIGA Defendant argues that Plaintiff's patent infringement claims should be dismissed because the alleged infringement occurred before U.S. Patent Nos. 11,175,680, and 11,294,403, were issued. The TIGA Defendant argues Plaintiff's patent infringement claim is premised on the facts in paragraph 75 of Plaintiff's Amended Complaint, where Plaintiff identifies the October 1, 2020, press release by the WaterBridge Defendants as evidence that the Defendants "completely mimicked and copied the functionality and features of SitePro's proprietary system." ECF No. 21 at 12 (citing ECF No. 15 at ¶ 75). Given that, the TIGA Defendant argues that the '680 and '403 infringement claims should be dismissed because the '680 Patent was issued on November 16, 2021, and the '403 Patent was issued on April 5, 2022—after the press release.

Plaintiff's response does not dispute that the TIGA Defendant may have developed the infringing system before the issuance of these two patents. ECF No. 30 at 9–10. Plaintiff notes, however, that the alleged infringing use has continued since the patents issued. *Id.* at 10. In response to the TIGA Defendant's argument that the Amended Complaint does not specifically allege any "post-issuance infringement," Plaintiff points to ten paragraphs, and an infringement chart attached to its complaint that it alleges are sufficiently pleaded to state a claim of infringement for continued use of the WaterBridge Clone System. ECF No. 32 at 8; ECF No. 15 ¶¶ 202–13 & Ex. K.

In the Court's judgment, resolving inferences in nonmovant's favor, the Complaint has sufficiently stated a claim for continued use of a patent that allegedly infringes. Defendant bears the burden of showing a failure to meet the pleadings standards here. The allegations of patent

infringement in Plaintiff's complaint do not have any indication of only applying to conduct occurring before issuance of the asserted patents. The Court is also persuaded that it can draw a reasonable inference that the infringement allegations apply to post-issuance conduct.

## IV.  RECOMMENDATION

For these foregoing reasons, the Court concludes and recommends that the TIGA Defendant's Motion to Dismiss (ECF No. 21) should be **DENIED**.

## V.  OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED** this 26th day of February, 2024.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE