IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SITEPRO, INC., § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | CIVIL NO. 6:23-CV-115-ADA-DTG |
| WATERBRIDGE RESOURCES LLC, § | |
| WATERBRIDGE OPERATING LLC, § | |
| WATERBRIDGE HOLDINGS LLC, § | |
| WATERBRIDGE MANAGEMENT INC., and § | |
| THE INTEGRATION GROUP OF THE § | |
| AMERICAS, § | |
| § | |
| *Defendants.* § | |

**REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

**TO:   THE HONORABLE ALAN D ALBRIGHT,
        UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. This suit has been brought by plaintiffs SitePro, Inc. ("Plaintiff") for infringement of its intellectual property consisting of trade secrets, trademark, and patents. Before the Court is Defendants WaterBridge Resources LLC *et al.*'s (collectively, "the WaterBridge Defendants") Motion for Partial Dismissal of Plaintiff's First Amended Complaint. ECF No. 20. After careful consideration of the briefs, arguments of counsel, and the applicable law, the Court **RECOMMENDS** that the WaterBridge Defendants' Motion for Partial Dismissal (ECF No. 20) be **DENIED**.

1

This suit was filed on February 13, 2023. On April 14, 2023, Plaintiff filed its First Amended Complaint. ECF No. 15. The WaterBridge Defendants filed this Motion for Partial Dismissal on May 23, 2023. ECF No. 20. Plaintiff filed its opposition on June 6, 2023. ECF No. 29. The WaterBridge Defendants filed a Reply on June 13, 2023. ECF No. 31. The Court held a hearing on September 12, 2023, in which it recommended that the motion to dismiss be denied. This written report and recommendation memorializes the recommendation made at the September 12, 2023, Hearing.

## I. FACTUAL BACKGROUND

This case arises from a prior relationship of the parties and the events that occurred after termination of that relationship. From 2015 to 2020, Plaintiff was a vendor for the WaterBridge Defendants, providing a supervisory control and data analytics ("SCADA") system to aggregate data from and to control operations of WaterBridge's network of saltwater disposal wells. Third-party EVX Midstream Partners was formed in 2015. The non-party EVX entities are WaterBridge affiliates that are managed by the WaterBridge Defendants' personnel pursuant to a shared services agreement. ECF No. 20 at 2; ECF No. 31 at 5 n.3. EVX first became Plaintiff's customer in December 2018. ECF No. 15 ¶ 86.

In 2020, the WaterBridge Defendants terminated Plaintiff's services under a release agreement, and the WaterBridge Defendants hired The Integration Group of the Americas, Inc. ("TIGA Defendant") to develop a SCADA system for it. The TIGA Defendant is a co-Defendant in this case. The WaterBridge Defendants and the TIGA Defendant are two, separate entities. The TIGA Defendant provided a Phase 1 Engineering Assessment to plan a migration in which TIGA Defendant and the WaterBridge Defendants repurposed the existing OnLogic IPC (the so-called "Industrial PC" as stated in Plaintiff's Amended Complaint) at each saltwater disposal facility and

2

integrated an Ignition Edge Panel for the local HMI project. ECF No. 15 ¶ 78. Plaintiff alleges that in late 2020 it discovered that the WaterBridge Defendants had not honored their contractual obligations and had allegedly misappropriated trade secrets. A press release that was issued on October 1, 2020, referenced the WaterBridge Defendants and the TIGA Defendant implementing a SCADA system allegedly identical to Plaintiff's system. A member of the TIGA Defendant, Trent Boudreaux, explained in the press release that TIGA Defendant had worked with the WaterBridge Defendants to deploy Ignition Edge Panels at 65 saltwater disposal well facilities using Industrial PCs. ECF No. 15 ¶ 75. Additionally, in August 2022, Plaintiff allegedly learned that the WaterBridge Defendants had begun to convert three of EVX's sites to the alleged WaterBridge Clone System. ECF No. 15 ¶ 87. Based on those events, Plaintiff filed this suit on February 13, 2023.

## II. LEGAL STANDARD

The WaterBridge Defendants' Motion is governed by Rule 12(b)(6). That Rule allows a claim to be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) Motion, the Court accepts all well-pleaded facts, views them favorably to the non-movant, and indulges all facts in favor of the non-movant. *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021). The facts must be sufficient such that the claim "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include specific factual allegations in support of the claim. *Id.* Simply reciting the elements of a cause of action with conclusory statements is insufficient. *Id.* If the facts allow the court to reasonably infer the defendant is liable for the alleged misconduct, the complaint has facial plausibility. *Id.*

## III. DISCUSSION

The WaterBridge Defendants' Motion seeks dismissal of seven counts in Plaintiff's First Amended Complaint. This report and recommendation is organized by the challenged counts.

### A.     Count IV: Computer Fraud and Abuse Act (18 U.S.C. § 1030)

In Count IV, Plaintiff alleges the WaterBridge Defendants violated the Computer Fraud and Abuse Act under 18 U.S.C. § 1030(a)(2)(C) and (a)(4). ECF No. 15 ¶ 136, 137. These subsections are independent bases of liability, and they require "access[ing] a computer without authorization or exceed[ing] authorized access." 18 U.S.C. § 1030(a)(2)(C), and (a)(4). Subsection (a)(4) also requires conduct furthering an intended fraud and obtaining anything valued at more than $5,000 in a one-year period. The WaterBridge Defendants' Motion to Dismiss argues that the access to a computer was *with* authorization, and thus, Plaintiff has not sufficiently alleged CFAA damages.

As to unauthorized access, the WaterBridge Defendants argue that the Industrial PCs, hardware, and computers were all owned by WaterBridge. ECF No. 20 at 6. The WaterBridge Defendants contend they cannot be liable since any access was done using their own hardware.

Plaintiff contends that it is irrelevant whether the computer that was used for access belonged to the WaterBridge Defendants. ECF No. 29 at 8. Plaintiff argues instead that it alleges that the WaterBridge Defendants "actually altered the computer, its settings and even disabled the attached hardware so that it could hide its unauthorized activities," and ran a "Clone System" at the same time as Plaintiff's proprietary system. ECF No. 29 at 9–10 (citing ECF No. 1 at ¶¶ 92, 94).

In the Court's judgment, the allegations of unauthorized access to Plaintiff's system are sufficient to state a claim. Even if Plaintiff's system was accessed using the WaterBridge Defendants' Industrial PCs, the WaterBridge Defendants did not have authorization to access

4

Plaintiff's systems no matter whose hardware was used. This is sufficient to state a claim. *Van Buren v. United States*, 141 S. Ct. 1648, 1657–58 (2021) (holding that exceeds access can occur when a user accesses part of a system for which the user does not have authorization) Plaintiff's allegation that the WaterBridge Defendants accessed and altered parts of its system that it did not have permission to access or alter sufficiently alleged a claim involving the requisite "unauthorized access" of subsections (a)(2)(C) and (a)(4).

As to CFAA damages, the WaterBridge Defendants further allege that Plaintiff has not plausibly stated a claim. Plaintiff disagrees and contends that Plaintiff's Amended Complaint identifies alleged misappropriations of property and information from Plaintiff that caused damage in an amount over $5,000. ECF No. 29 at 10.

In the Court's judgment, at the 12(b)(6) stage where the Court draws reasonable inferences in favor of the nonmovant, the alleged misappropriated information has plausible economic value of more than $5,000 and satisfies subsection (a)(4).

Further, in a footnote, the WaterBridge Defendants state that they join the TIGA Defendant's "Partial Motion to Dismiss as to CFAA limitations." ECF No. 20 at 6 n.3. As stated in the Report and Recommendation recommending denial of the TIGA Defendant's Motion, the Court recommends denying that portion of the WaterBridge Defendants' Motion because the Court can plausibly infer that Plaintiff was not aware of the excessive unauthorized access until it discovered the access being made through the EVX facilities in August 2022.

### B.     Count V: Civil Conspiracy

The WaterBridge Defendants argue that Count V, Conspiracy, should be dismissed because it is not tied to any particular tort. The WaterBridge Defendants further argue that insofar as the Conspiracy claim is based on the taking and use of proprietary business information, it is preempted by the Texas Uniform Trade Secrets Act (TUTSA). ECF No. 20 at 19.

TUTSA preempts some things but not others. TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). TUTSA does not preempt "contractual remedies, whether or not based upon misappropriation of a trade secret," or "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* at § (b)(1)–(2).

Plaintiff concedes that Civil Conspiracy is a derivative tort. ECF No. 29 at 17 (citing *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019)). However, Plaintiff argues that its Civil Conspiracy allegations are based on tortious interference with contractual relations—which is an underlying tort and not preempted by TUTSA. *Id.*; *see infra* discussion of Count VI.

The Court agrees with Plaintiff. Plaintiff's Count V for Civil Conspiracy incorporates the residual allegations of its complaint—which include more than just trade secret misappropriation claims—and makes specific reference to lost business and contractual relationships with third-party EVX. At this stage, this is sufficient to state a claim for Civil Conspiracy.

### C. Count VI: Tortious Interference With Contractual Relations

The WaterBridge Defendants allege that TUTSA preempts Plaintiff's tortious interference claim because it is based on the same core factual allegations as Plaintiff's trade secret claims. Plaintiff distinguishes its trade secrets claim from its tortious interference claim by arguing that tortious interference is predicated on the WaterBridge Defendants disrupting Plaintiff's agreements with EVX.

The Court is persuaded that the tortious interference claim is not preempted under these circumstances at the 12(b)(6) stage. First, Plaintiff's allegations about non-party EVX raise contractual interference issues that are separate from any trade secrets. ECF No. 15 ¶ 151–55 (discussing tortious interference with EVX contracts in Plaintiff's First Amended Complaint). The relationship between the WaterBridge Defendants and EVX is sufficient to state a plausible claim

at this stage, with inferences drawn in nonmovant's favor. It is notable that the parties' briefing disputes the factual nature of the relationship between the WaterBridge Defendants and EVX. *See* ECF No. 31 at 5 n.3 (WaterBridge's reply disagreeing with Plaintiff's response that "WaterBridge acquired EVX," but stating "WaterBridge and EVX are affiliated companies and WaterBridge personnel manage and operate the EVX business" (citing ECF No. 29 (Plaintiff opposition) at 6)). Second, at this stage of the case, it has not been proven that the allegedly misappropriated information was a trade secret, which ameliorates the preemptive effect of TUTSA. In the Court's judgment, the WaterBridge Defendants have not met their burden to show the tortious interference claims are preempted under the 12(b)(6) standard.

> **D.  Count XIII: Trademark Infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1),**
>
> **E.  Count XIV: False Designation of Origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),**
>
> **F.  Count XV: Trademark Infringement of Unregistered Mark Under Lanham Act, 15 U.S.C. § 1125(a), and**
>
> **G.  Count XVI: Common Law Trademark Infringement Under Texas Law**

Plaintiff allegedly uses and owns the SITEPRO Registered Mark in connection with its software and services. Plaintiff alleges trademark infringement under Counts XIII–XVI. Plaintiff has allegedly suffered consumer confusion and has received calls from operators to Plaintiff when the WaterBridge Clone System, bearing Plaintiff's mark, dysfunctions. ECF No. 15 ¶ 89. The WaterBridge Defendants argue that Plaintiff's trademark infringement allegations in Count XIII are barred by the First Sale Doctrine. Specifically, the WaterBridge Defendants argue that as a buyer, it is free to use any hardware that it bought with Plaintiff's branding visible as it pleases. Plaintiffs responds that the application of the first sale affirmative defense is not amenable to resolution on a 12(b)(6) motion here, but that even if it is, the WaterBridge Defendants altered

Plaintiff's software embedded in Plaintiff's Industrial PC to become the WaterBridge Clone System, but left Plaintiff's Registered Mark on the altered Industrial PC. Plaintiff argues this defeats application of the first sale defense.

The WaterBridge Defendants further argue that Plaintiff's trademark allegations in Counts XIII–XVI are barred by a failure to allege that the WaterBridge Defendants used the marks in commerce. Plaintiff provides several examples of what it alleges are plausible uses of the marks in commerce. Plaintiff points to a video promoting the WaterBridge Clone System and references Plaintiff's Remote Operations Center. ECF No. 29 at 14–15. Plaintiff also argues that the WaterBridge Defendants' mobile app was remarkably similar to Plaintiff's mobile app. ECF No. 115 ¶¶ 75–76. This is sufficient at the 12(b)(6) stage to plausibly allege use in commerce.

Taking all well-pleaded facts as true and indulging all inferences in Plaintiff's favor, the Court is persuaded that the WaterBridge Defendants' Motion failed to satisfy the Rule 12(b)(6) standard for dismissal. As such, the Court recommends denial of the WaterBridge Defendants' Motion addressing these counts, Count XIII – XVI.

## IV. RECOMMENDATION

For these reasons, the Court recommends that the WaterBridge Defendant's Motion for Partial Dismissal (ECF No. 20) should be **DENIED**.

## V.OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the

Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED** this 26th day of February, 2024.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE